## Case No. 9,723.

### MONTELL v. UNITED STATES.

[Taney, 24.][1]

Circuit Court, D. Maryland. April Term, 1840.

SHIPPING—PUBLIC REGULATIONS—BOND TO RETURN CREW—VESSEL SOLD IN FOREIGN PORT.

1. The bond given to the United States, under the act of congress passed 28th February, 1803, § 1 [2 Stat. 203], by the master of a vessel bound to a foreign port, conditioned for the return of the crew to the United States, does not embrace the case of a vessel sold in a foreign port, and which does not return to the United States.

2. The bond does not extend to cases where the seaman is lawfully separated from the ship, or is separated from her without the fault of the master or owner. It applies to those cases only where the vessel returns to a port of the United States; to cases where the seamen continue subject to the lawful authority of the master, and where it was in his power to bring them home.

[Error to the district court of the United States for the district of Maryland.]

This suit was instituted by the United States in the district court, on the 4th of November 1839, against Francis T. Montell, the plaintiff in error, and John B. Corner, on the following bond: "Know all men by these presents, that we, John B. Corner, of Baltimore in the state of Maryland, master or commander of the schooner called the Elvira, now lying in the district of Baltimore, and F. T. Montell, in the city of Baltimore, in the state of Maryland, are held and firmly bound unto the United States of America, in the full and just sum of four hundred dollars, money of the United States; to which payment well and truly to be made, we bind ourselves, jointly and severally, our joint and several heirs, executors and administrators, firmly by these presents. Sealed with our seals, and dated this 10th day of May, one thousand eight hundred and thirty-nine. Whereas, the above bounden John B. Corner hath delivered to the collector of the customs of the district of Baltimore, in the state of Maryland, a verified list containing, as far as he can ascertain them, the names, places of birth, residence and description of the persons who compose the company of the said schooner called the Elvira, now lying in the said district, of which he is at present mas-

ter or commander, of which list the said collector has delivered to the said J. B. Corner a certified copy. Now the condition of the above obligation is such, that if the said John B. Corner shall exhibit the aforesaid certified copy of the said list, to the first boarding officer at the first port in the United States at which he shall arrive on his return thereto, and then and there also produce the persons named therein to the said boarding officer, except any of the persons contained in the said list who may be discharged in a foreign country, with the consent of the consul, vice-consul, commercial agent, or vice-commercial agent there residing, signified in writing under his hand, may arrive as aforesaid, with other persons composing the crew as aforesaid, and who may have died or absconded, or may have been forcibly impressed into other services, of which satisfactory proof shall be then also exhibited to the said last-mentioned collector, then and in such case, the said obligation shall be void and of no effect, otherwise it shall abide and remain in full force and virtue. John B. Corner. (Seal.) Francis T. Montell. (Seal.) Sealed and delivered in the presence of H. Ring."

1st Exception. The plaintiffs to support the issues on their part, offered in evidence the following bond (being the same above set forth), the due execution of which was admitted, and likewise offered in evidence the certified list of the crew of the schooner Elvira, sworn to by the master of said schooner, on the 9th day of May, 1839 (and embodied in said exception), and further proved by Hamilton Ring, that he is an officer in the custom-house at Baltimore, and has charge of the marine papers, such as reports, returns of registers, certificates of foreign consuls and commercial agents, and that no report of the master of the Elvira, in regard to the seamen mentioned in the certified list inserted in the exception, has been made to said custom-house; he further proved, that since the clearing of the said schooner Elvira, he has seen at Baltimore, John B. Corner, the master of said schooner, but that the return of said schooner has never been reported at the custom-house at Baltimore, nor does he know that said schooner has returned to any other port in the United States; whereupon, defendant, by his counsel, prayed the court to instruct the jury: That the evidence offered by the United States in this case does not bring the defendant within the condition of the bond exhibited in evidence, and that the plaintiffs cannot, therefore, recover. Which prayer was rejected; the court (Heath, J.) believing a primâ facie case was made out in proof; that the case was within the first section of the act of 1803; and that it was not necessary for the government to prove the negative, that the vessel was not sold. To this opinion, and the rejection of said prayer, the defendant, by his counsel, excepted.

2d Exception. After the evidence offered by the plaintiffs, detailed in the first bill of exceptions on the part of the defendant, and which is to be considered as incorporated in this, the defendant's second bill of exceptions, the defendant offered in evidence the following consular certificate: "Consulate of the United States of America: Havana. I, John A. Smith, vice-consul of the United States of America, do hereby certify that John B. Corner, master of the schooner Elvira, produced and discharged, according to law, the following persons, whose names are on the list of the crew, as citizens of the United States, to wit: Joel Pomeroy, Charles Smith, Oliver Greenleaf and James Mitchell. And the appearer having produced to me the contract with the seamen, it appeared that they had agreed to go the voyage from Baltimore, to receive, each, twenty-five dollars advance, and two dollars per month wages; on questioning them, they answered, it was their agreement. In testimony whereof I hereunto set my hand and affix my seal of office, at Havana, this 28th day of May A. D. 1839, and of the Independence of the United States the 63d. J. A. Smith. [Seal.]" Which was admitted to be signed and sealed by the vice-consul of the United States, at Havana, and was presented to the collector of the port of Baltimore. It was stated and admitted that the crew of the schooner Elvira were discharged at Havana. Whereupon the district attorney moved the court for its opinion and direction to the jury, that the said certificate affords no defence to this action. 1. Because Patrick Poinsen was not accounted for. 2. Because it does not appear thereby that Rossiter B. Wade, whose name appears first on the crew list, heretofore given in evidence by the plaintiffs, and who was discharged in Havana, was discharged in the Havana with the consent of the consul or vice-consul, nor that extra wages had been paid to him, or on his account. 3. Because the contract for wages, as set forth in the said certificate, is contrary to the policy of the act of congress. Which prayer the court granted, and instructed the jury, that Poinsen, being a foreigner, was not embraced by the law; that the name of the said Rossiter B. Wade, discharged in the Havana, ought to have been accounted for in the certificate of the discharge of the crew; that the first section of the act of congress covered him, as one of the crew; and that the failure to obtain the vice-consul's certificate of his discharge, was a failure to comply with the provisions of the law, and the defendant is liable on his bond. The court instructed the jury, upon the whole, that the evidence offered was no defence to this action. Whereupon the defendant, by his counsel, called William Frick, the collector, and asked him whether he had not seen the said Wade in the city of Baltimore, and at the custom-house in said port, after his sailing in said vessel. To the competency of which testimony the district attorney objected, and the court sustained the objection, and rejected the testimony; whereupon the defendant, by his counsel, prayed leave to except to said opinion, and directions of the court, and each of them. The verdict and judgment of the district court being against him, the defendant sued out this writ of error.

St. George W. Teackle and John Nelson, for plaintiff in error.

Nathaniel Williams, for defendant in error.

TANEY, Circuit Justice. This case is brought here by a writ of error to the district court. The suit was brought by the United States against Montell, upon a bond taken under the act of congress of February 28, 1803 (2 Stat. 203), for the return of the crew of the steamer Elvira, of Baltimore.

The first section of this act directs that before a clearance be granted to any vessel bound on a foreign voyage, the master shall deliver to the collector a list of the ship's company, and the collector shall deliver to him a certified copy of the said list; and that he shall enter into a bond that he shall exhibit the said certified copy to the first boarding officer, at the first port of the United States at which he shall arrive on his return thereto, and at the same time produce the persons named therein to the boarding officer; whose duty it is to examine the men, with such list, and report to the collector as mentioned in the said section.

The third section of the same act provides, that whenever a vessel belonging to an American citizen shall be sold in a foreign country, and her company discharged, or where a seaman is discharged, with his own consent, in a foreign country, the captain shall pay into the hands of the American consul, residing at the place of discharge, three months' wages, over and above the wages due such seaman, two-thirds of which shall be paid to the seaman, upon his engagement on board of any vessel, to return to the United States; the remaining third to be retained, to form a fund for the relief of destitute American seamen in foreign parts.

It is unnecessary to state in detail the contents of the different exceptions, which were taken in the district court. The judgment of that court was in favor of the United States for the penalty of the bond; and the point on which the case turned will be better understood, by stating the material facts, as they appear upon the whole record, without referring particularly to the different exceptions, in which they are inserted.

It appears from the record, that the schooner Elvira, an American vessel, owned in Baltimore, cleared from this port for Havana, in the island of Cuba, about the tenth of May 1839. Montell, a merchant of this city, was

the owner of the vessel, and John B. Corner, of the same place, the master for the voyage. On the day the schooner sailed, Corner delivered to the collector the crew-list, as directed by the act of congress above mentioned, and received the certified copy on the same day; and at the same time, he entered into the bond prescribed by the first section of the act of congress; in this bond, Montell, the owner, who is the plaintiff in error, was the security. The Elvira never returned to this country. The master returned in another vessel, some time before this suit was brought; and at the trial in the district court, the certificate of the American consul was produced, showing the discharge of all the crew at Havana, except Rossiter B. Wade, who went out as mate of the vessel.

It has been insisted on the part of the United States, that there is sufficient evidence on the record to show that the Elvira was sold at Havana, and that the crew were there discharged; and the district attorney contends that the bond of the master is forfeited: first, because he did not exhibit the crew-list to the first officer of the customs, who boarded the vessel, in which he returned to the United States, and account to him for the crew; secondly, because it does not appear that the three months' wages of the mate, Rossiter B. Wade, was paid to the consul.

I doubt very much whether it sufficiently appears, as contended for by the district attorney, that the Elvira was sold at Havana. But the chief point in controversy is, whether the bond embraces the case of a vessel sold in a foreign port, and which does not return to the United States; and as this point has been argued, I shall treat the case as if that fact appeared in the record, in order to decide the question upon which both parties wish for the opinion of the court.

Assuming then that the vessel was sold, the case presented, is precisely the one provided for in the 3d section of the law above referred to. The American owner may, if he thinks proper, always sell his ship in a foreign port; and if he does sell, he may discharge the crew; and in such a case, it does not require the assent of the consul to justify the discharge. The captain is bound to pay into the hands of the consul, the three months' wages as before mentioned, and the seaman is entitled to two-thirds of it, as soon as he has engaged a passage in another vessel, to return to the United States; but the captain has no power to compel him to return; he has no longer any authority over him, when he is lawfully discharged; indeed, he has nothing to do with him; for even the two months' wages are not to be paid to the seaman by the captain, but by the American consul; and it is at the option of the seaman to return or not. It would be most unreasonable, in such a case, to forfeit the captain's bond, if the seaman did not return; and it would require very plain words to satisfy the court that the

legislature could have intended to make such a provision.

But it is very evident that the bond does not extend to cases where the seaman is lawfully separated from the ship; or separated from the ship without the fault of the master or owner. The bond applies to those cases only where the vessel returns to a port of the United States; to cases where the seamen continued subject to the lawful authority of the master, and where it was in his power to bring them home. The words of the first section apply only to cases of this description; they imply that the master is still in command of the vessel in which he returns, and that the seamen are on board, and subject to his authority. Thus, the provisions of this section imply, that the boarding officer will make known to him his official character, and will call on him to produce the crew-list, and to produce the men also; yet he cannot be called on to produce the crew, unless he is still in the exercise of authority over them, and exercises it in the vessel where he is himself found; for the boarding officer is required to examine the crew, with the crew-list produced; everything required to be done, presupposes the captain to have returned in command of the same vessel in which he sailed. And even if the vessel returns without the seaman, he is not liable to the penalty of the bond, under the provisions of the first section, provided the seaman was discharged with the consent of the consul; nor is he answerable, where he dies or absconds, or is forcibly impressed in another service. Now, if the bond is not forfeited, where the seaman is discharged, with the consent of the consul, how can it be considered as forfeited, where the seaman is lawfully discharged, upon the sale of the vessel, without the consul's consent? The two cases are in principle the same, and they are both expressly placed on the same footing in the third section, and the same provision is there made for each of these classes of cases.

But it seems to be supposed that the bond is forfeited, even where the seamen are lawfully discharged, unless the three months' wages are paid to the consul. The court think otherwise: the cases where seamen may be lawfully discharged, are provided for in the third section, and there is no reference in that section to the bond directed to be given by the master. The condition of the bond is prescribed in the first section, and it certainly can embrace no cases, beyond those enumerated in the law; and the payment of the three months' wages, where the vessel is sold, or where the seaman is discharged with the consul's consent, is not mentioned in the condition of the bond, as directed in the act of congress, and consequently is not intended to be secured by it.

The two sections of the law, before mentioned, apply to different cases; the first provides for the cases where the vessel returns

to the United States; the third provides for cases where she is sold abroad. They are both intended to guard the seamen, who are always friendless and unprotected, in foreign ports, from the injustice and despotism of the captain; and also to preserve them, as far as possible, for the service of our own marine. Therefore, when the vessel returns, the captain is compelled to bring home his crew with him, unless he can show that they were separated from the ship, in some one of the modes pointed out in the first section; and the bond is intended to accomplish this object; but it was not the policy of the United States to prevent our ship-owners from selling their vessels in foreign ports; and it would have been a virtual prohibition of sale, if they had been compelled, notwithstanding a sale, to bring home the crew. The third section, therefore, provided for the cases of sales in foreign ports, and instead of compelling the captain to bring home the crew, it compels him to furnish the consul with the means of sending them home, if they are willing to come, and tempts them to return by refusing them the money, until they have engaged a passage to the United States. But the bond prescribed in the first section, was not intended to cover the cases mentioned in the third; there is nothing, in any part of the law, from which such an intention can be inferred.

If, therefore, the vessel was sold abroad, the bond in question does not apply to the case; no suit can be maintained on it, unless the Elvira has returned to the United States. It is admitted that she has not returned. The United States, therefore, can have no cause of action on the bond; and it is unnecessary to inquire whether Rossiter B. Wade was or was not discharged, or was or was not paid his three months' wages; because there can be no breach of the condition of the bond, and, consequently, no cause of action upon it, if the Elvira has not returned to the United States.

Some other questions were argued at the bar; but it is unnecessary to express an opinion upon them, as the points, above decided, dispose of the case. The judgment of the district court is, therefore, reversed.

[NOTE. Suit was brought by the United States against the master, Francis T. Montell, and his sureties, upon another bond, given for the proper return of the ship's register. Judgment was had upon this bond in the district court, and the money, $1.200, was paid into court. The collector of customs thereupon filed his petition in the district court, praying that a moiety of the sum recovered be paid to him and to the naval officer and surveyor, under the act of congress relative to penalties and forfeitures. The district court dismissed the petition, but was reversed by the circuit court upon appeal by the petitioners. Case No. 15,798.]